IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICAH ASHER JEFFERSON,

    Plaintiff,

v.

    Case No. 3:19-CV-01079-NJR

CRAIG ASSELMEIER,

    Defendant.

## MEMORANDUM AND ORDER

Pending before the Court is a Motion for Summary Judgment by Plaintiff Micah Asher Jefferson (Doc. 48). For the reasons set forth below, the Court denies the Motion.

### FACTUAL AND PROCEDURAL BACKGROUND

This action stems from events which occurred during Jefferson's term of incarceration at Menard Correctional Center, a maximum-security facility operated by the Illinois Department of Corrections ("IDOC").

Jefferson indicates that in 2018 he began seeing Defendant Dr. Craig Asselmeier, a dentist. Jefferson states that he told Asselmeier that two teeth (#12 and #16) in the upper left side of his mouth were causing pain, that Asselmeier convinced him to remove two lower teeth that did not cause pain, and that the loss of those two lower teeth made eating difficult (Doc. 48 at 3-4). Asselmeier confirms that he did see Jefferson on four occasions between January and March of 2018 (Doc. 48 at 30), but he denies that Jefferson complained of teeth #12 and #16 (Doc. 53 at 2). Asselmeier confirms that he extracted teeth # 17 and #18 on the lower left side of Jefferson's mouth, but indicates that he advised Jefferson of the risks connected with extraction prior to the operation and that Jefferson signed a consent form

(Doc. 53 at 2).

Jefferson filed a series of grievances regarding his tooth pain in January of 2019 (Doc. 48 at 13-18). Asselmeier responded to a grievance filed by Jefferson on January 27, 2019, in which he complained of three missing teeth on the right side of his mouth and two on the left, with another cracked tooth on the bottom right "which is still causing me a lot of pain" (Doc. 4 at 16). In his response, Asselmeier indicated that Jefferson had refused fillings on September 23, 2018, but that he would be scheduled for another appointment following his grievance (Doc. 48 at 17). He was again seen by Asselmeier on February 3, 2019 (Doc. 48 at 30). Jefferson alleges that on that occasion, Asselmeier told him that he did not care about Jefferson's pain and would leave the broken teeth in his mouth if he continued to complain (Doc. 48 at 29). According to Jefferson, Asselmeier then drilled holes in another tooth, causing damage that later required that tooth to be removed (*Id.*). Asselmeier denies ever being told by Jefferson of pain in teeth #12 and #16 and denies that he ever made the alleged statements (Doc. 53 at 2-3). Jefferson further denies that he drilled holes in another tooth, stating that he instead removed some decay from tooth #28, though not all decay could be removed without "going deep subgingivally" (*Id.* at 3).

Asselmeier indicates that he did treat Jefferson beginning on January 31, 2018. On that date, he noted several teeth but made no specific notations relate to teeth #12 and #16, yet he states that he would have made a notation had he observed that those teeth were broken (*Id.* at 30). Asselmeier states that he did not ever extract teeth #12 and #16 or order their extraction, nor did he ever observe any decay or defects in those teeth (*Id.* at 28-30). Another dentist later noted that teeth #12 and #16 were non-restorable (*Id.* at 29). Jefferson states that teeth #12 and #16 were finally removed in October 2019 after he was transferred to Lawrence

Correctional Center and seen by a dentist at that facility (Doc. 48 at 35).

Jefferson filed this action on October 3, 2019. Upon preliminary screening, the Court construed his pro se complaint as containing a single count alleging that Asselmeier was deliberately indifferent to his tooth pain in violation of the Eighth Amendment (Doc. 10). Jefferson filed the instant motion for summary judgment on September 18, 2020, though the Court's Scheduling Order of July 31, 2020, had set the discovery and dispositive motion deadlines for May 28, 2021, and June 25, 2021, respectively (Doc. 44). The Court allowed Asselmeier additional time to take Jefferson's deposition and respond, and Asselmeier filed his response on January 20, 2021 (Doc. 53).

### LEGAL STANDARD

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 255 (1986). A "court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence[.]" *Reid v. Neighborhood Assistance Corp. of America*, 749 F.3d 581, 586 (7th Cir. 2014) (*quoting Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005)).

## DISCUSSION

A.   *Applicable Law*

To succeed on a claim based on deliberate indifference in the context of medical services, an inmate must demonstrate (1) an objectively serious medical need and (2) that defendants had a subjectively culpable state of mind in acting or failing to act in disregard of that risk. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

A medical need may be deemed serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). A medical condition "need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Id.* (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)).

To establish that prison medical staff acted with a subjectively culpable state of mind, an inmate need not show that harm was actually intended, but merely that "defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Id.* (quoting *Greeno*, 414 F.3d at 653). Medical professionals are entitled to deference when acting in their professional capacities, and inmates face a heavy burden when bringing claims of deliberate indifference against them. *Id.* "A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a

substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). Merely negligent conduct will not rise to this level—rather, such conduct must reach a level "showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Rosario v. Brawn*, 670 F.3d 816, 821-822 (7th Cir. 2012) (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)).

B.  *Discussion*

Here, Jefferson asserts that there is no dispute that his tooth pain was a serious medical need, that Asselmeier was aware of his tooth pain, and that Asselmeier failed to act in disregard of the risk posed by that need. There are, however, clear factual issues that prevent granting summary judgment. Most importantly, the evidence presented by the parties presents doubt as to whether Asselmeier was aware of the pain in teeth #12 and #16 specifically. The record undisputedly shows that Asselmeier did examine Jefferson and that he did respond to a grievance relating to teeth pain. But Asselmeier made no notes that would indicate that he observed or was told of an issue connected with teeth #12 and #16, and the grievance that he responded to did not clearly refer to teeth #12 and #16. It could be argued, perhaps, that a dentist in Asselmeier's position should have observed the damage to those teeth, yet the Court cannot say that this is an undisputed fact based solely on Jefferson's inexpert conjecture.

Even if Jefferson could show that Asselmeier was aware of the issues with teeth #12 and #16, there is still uncertainty surrounding whether those issues rose to the level of a serious medical need and whether Asselmeier's lack of action was truly inappropriate. The

mere fact that the teeth were extracted nine months later does not mean that it was inappropriate for Asselmeier to take no action. Similarly, while Jefferson correctly notes that certain courts have found certain dental issues to constitute a serious medical need, that does not mean that all dental concerns rise to that level, and Jefferson has not provided undisputed evidence of the severity of his condition.

Lastly, even if Jefferson's condition was serious and Asselmeier was aware of it, Jefferson has not provided undisputed evidence that Asselmeier's actions were inappropriate. Asselmeier was aware of Jefferson's general tooth pain, without reference to specific teeth, yet he did take steps to remedy that pain. As Asselmeier notes, he provided pain medications, and Jefferson further had the opportunity to purchase over-the-counter pain medication yet chose not to do so (Doc. 53 at 11). On its own, Jefferson's inexpert testimony is insufficient to establish that Asselmeier's treatment was inadequate.

## CONCLUSION

The Court **DENIES** Jefferson's Motion for Summary Judgment (Doc. 48).

**IT IS SO ORDERED.**

**DATED:  May 26, 2021**

*[signature]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**